IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA SEGARRA,<br>　　　Plaintiff,<br><br>v.<br><br>THE PHILADELPHIA PARKING<br>AUTHORITY, et al.,<br>　　　Defendants. | :<br>:<br>:<br>:　CIVIL ACTION NO. 13-1419<br>:<br>:<br>:<br>:<br>:<br>: |

### MEMORANDUM OPINION

**RUFE, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**FEBRUARY 18, 2014**

　　　　Before the Court are Defendants' motion to dismiss Jessica Segarra's Amended Complaint and Segarra's response thereto. For the reasons stated below, the motion will be granted in part and denied in part. Segarra will be granted leave to amend.

**I.　　Background**

　　　　Jessica Segarra was employed by the Philadelphia Parking Authority ("PPA") as a Parking Enforcement Officer on the evening of August 12, 2011. That night, as she was on the street having a telephone conversation with Kevin Manzi, another PPA employee, about parking enforcement strategy, a man wearing ordinary clothes, looking and smelling drunk, accosted her. He asked her why she was talking on the phone while she was working. Segarra attempted to walk away, but the man yelled at her and grabbed her, preventing her from leaving. It turned out that the man was Defendant Elijah Wooden, an official at PPA who outranked Segarra.

　　　　Wooden's friends pulled him off Segarra, and Wooden called Defendant Rob Castor, Segarra's immediate supervisor. Castor brought Segarra back to PPA headquarters where she filled out an incident report and was suspended. After leaving headquarters, she called the police

to report her altercation with Wooden. She returned to work on August 16, 2011, when she was called into a meeting with Defendants Thorton, Bielecki, O'Connor, and Wooden. She was told to make another incident report, which she did. She was then suspended again and eventually fired on August 22.

Segarra sued PPA, Wooden, Castor, and the other defendants who were at the August 16 meeting, alleging that PPA was a hostile work environment for women, that she was fired for complaining about on-the-job gender discrimination, that she was fired for exercising her First Amendment right to call the police, and that Wooden committed the common-law torts of assault and battery. Defendants have moved to dismiss the complaint in its entirety. For the reasons below, the motion will be granted in part and denied in part without prejudice.

## II. Standard of Review

In order to survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[1] Additionally, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[2] A plaintiff who survives a motion to dismiss for failure to state a claim on which relief may be granted states facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[3]

## III. Discussion

   A.   *Gender Discrimination*

---

[1] Fed. R. Civ. P. 8(a)(2).

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Gender discrimination claims are analyzed under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*.[4] That means Segarra must first make out a *prima facie* case of discrimination, after which the burden of production will shift to Defendants to articulate a non-discriminatory reason for the adverse employment actions, and then the burden will shift back to Segarra to show that the proffered explanations are pretextual.

To state a claim for gender discrimination under Title VII of the Civil Rights Act, Segarra must allege "(1) that [s]he is a member of a protected class; (2) that [s]he is qualified for [her] position;" and (3) that she suffered an adverse employment action "(4) under circumstances that give rise to an inference of unlawful discrimination such as" when a person not of the protected class similarly situated to Segarra did not suffer the same adverse treatment.[5] Additionally, Segarra may state a *prima facie* claim if she sufficiently alleges that PPA was a hostile work environment. In order to do so, the "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[6] Courts must "determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[7]

---

[4] 411 U.S. 792, 802–03 (1973). *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

[5] *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410–11 (3d Cir. 1999).

[6] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

[7] *Id.* at 787–88 (internal quotation marks omitted)

The only allegation in the Complaint that supports the inference that she was suspended and eventually fired because she is a woman is that she was talking on the phone with Kevin Manzi, a male PPA employee, when Wooden confronted her, and that Manzi did not suffer suspension or termination. However, the Complaint does not allege that Manzi occupied the same position as Segarra or that her supervisors had any basis to assume that talking on the phone would have interfered with Manzi's duties. Segarra was outside patrolling her beat when Wooden approached her, but the Complaint does not disclose where Manzi was, what he was doing, or whether it was appropriate for him to be on the phone at the time. Even though the complaint alleges that it was not a violation for Segarra to talk on the phone, the mere fact that Manzi is a male is not enough to support a claim of gender discrimination where, as here, there is no reason to infer that the supervisors should have been similarly motivated to suspend Manzi (or not to suspend Segarra).[8] Additionally, Segarra alleges no facts in her complaint to support the inference of such severe or pervasive hostile conduct as to amount to a change in the terms and conditions of her employment, as necessary to support a Title VII claim on the basis of a hostile work environment.[9]

In her opposition to Defendants' motion to dismiss, however, Segarra makes some claims that could support an inference of gender discrimination and a hostile work environment. Specifically, she claims that Wooden "inappropriately touched her breast area,"[10] and that the PPA's drug and alcohol abuse policy protects against retaliation for reporting violations of it, while the sexual harassment policy offers no such protection. These allegations are not in the Amended Complaint, but they do support Segarra's position. Therefore, the Court will allow

---

[8] *Cf. Orji v. City of Philadelphia*, 12-cv-1, 2013 WL 3283463, *13 (E.D. Pa. June 27, 2013).

[9] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

[10] Doc. No. 12 at 14.

Segarra to amend her complaint to include any facts that may support her claims of gender discrimination and a hostile work environment.

### B. *Title VII Retaliation*[11]

Segarra also asserts that her suspension and the termination of her employment resulted from her complaints of gender discrimination. However, she alleges no specific instances of complaining to anyone at PPA of gender discrimination. She alleges that she filled out an incident report, but the Amended Complaint does not attach her incident report or make allegations that it contained anything that could be read as a complaint about gender discrimination or that it in any way amounted to activity protected by Title VII. Therefore, it would be inappropriate to infer that she was fired in retaliation for claims of gender discrimination, and this claim must be dismissed.

### C. *First Amendment Retaliation*

Segarra argues that she was fired because she exercised her First Amendment rights when she called the police about Wooden's assault. However, Defendants correctly point out that she alleged no facts in the Amended Complaint that could lead a factfinder to conclude that Defendants knew about her call to the police. Therefore it would be unreasonable to infer that she was fired for doing so.

In her response to Defendants' motion to dismiss, Segarra states that she told Defendant Castor that she intended to call the police and that she told the Head Ticketing Supervisor at PPA that she did call the police.[12] These allegations are missing from the complaint and therefore

---

[11] Segarra's retaliation claims are included under both the first and second counts of her complaint. The counts are discussed together here because they must be dismissed for the same reason.

[12] Doc. No. 12 at 4.

5

cannot be considered on a motion to dismiss, but they persuade the court that amendment would not be futile, and therefore leave to amend will be granted.

### D. PHRA Claims

Segarra's PHRA claims will be dismissed and leave to amend them will be granted for the same reasons as her federal claims.[13]

### E. Assault and Battery

In Pennsylvania, the intentional tort of battery is, simply put, "unconsented touching that is either harmful or offensive."[14] And "an assault may be described as *an act* intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery."[15]

Segarra has alleged sufficient facts to state claims for assault and battery: she has alleged that Wooden approached Segarra with drunken hostility, yelled at her, grabbed her, and physically prevented her from leaving the scene. Such a confrontation would be offensive to a reasonable person, and from the fact that it occurred, it can be inferred that Wooden intended it to occur. Similarly, the yelling and Wooden's approach lend credibility to the claim that he intended to put Segarra in reasonable apprehension of the impending battery; the battery itself also lends plausibility to the claim of assault. Segarra described the time and place of the altercation with sufficient particularity to inform Wooden of what he must defend against, and thus her complaint states a cause of action for assault and battery.

## IV. Conclusion

---

[13] *See, e.g., Orji*, 2013 WL 3283463, *6 n.6.

[14] *Cooper ex rel. Cooper v. Lankenau Hosp.*, 51A.3d 183, 191 (2012)

[15] *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (1960).

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part, and Plaintiff will be granted leave to amend. An appropriate Order follows.